UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JENNIFER MATAVA, : | |
|     Plaintiff, : | |
| : | No. 3:09-cv-01819-WWE |
| v. : | |
| : | |
| JOHN W. COLLINS, : | |
|     Defendant. : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jennifer Matava filed a complaint against defendant John W. Collins alleging that he violated her right to be free from malicious prosecution pursuant to the Fourth Amendment to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

Specifically, plaintiff claims that she was arrested and charged with conspiracy to commit larceny in the fourth degree pursuant to an arrest warrant issued by a judge of the Connecticut Superior Court on the basis of a misleading affidavit prepared by defendant, who was at the time a Lieutenant in the Police Department of Vernon, Connecticut.

Defendant has filed a motion for summary judgment. For the following reasons, the motion for summary judgment will be granted.

**BACKGROUND**

On September 6, 2006, plaintiff was arrested and charged with one count of conspiracy to commit larceny in the fourth degree, in violation of Conn. Gen. Stat. §§ 53a-125 and 53a-48. The arrest warrant was issued based on a fifteen page affidavit prepared by defendant. The affidavit summarizes accusations against plaintiff and her husband supplied to the Vernon Police

1

Department by Best Buy Oil Company Inc., A&T Auto Parts Inc., Stephen Automall Centre Inc., and Classic Auto Finance Inc.  Defendant summarized the charges of wrongdoing as follows:

> There is strong circumstantial evidence that the Matavas arrange for goods and pay with checks never intending to allow the checks to be cashed.  It appears the Matavas attempt to insulate the check drawer from the check by having a different person proffer the check, when attempts are made by the payee to collect the debt, the Matavas have claimed a defect with the good and proclaimed the issue civil, or have promised a new check and then never sent one, or a combination of the two.  This would indicate an intent to defraud the persons they are doing business with.  Collins Aff.10-11.

Plaintiff contends that defendant's affidavit was knowingly and intentionally misleading as to several material facts which were misrepresented by defendant for the specific and unlawful purpose of causing the plaintiff to be arrested, charged and prosecuted.  Plaintiff alleges that defendant made the following misrepresentations:

1. Plaintiff was an authorized signatory to a Bank of America account in the name of "J & M Builders" or was authorized to issue checks on said account;

2. Plaintiff had the ability to access Bank of America account information for J & M Builders, and to determine account balances or the codes necessary to stop payment on any check issued from said account;

3. Plaintiff was an authorized signatory to the New Alliance Bank Account of Mathew Matava (plaintiff's son), or was authorized to issue checks from said account, and had access to the codes necessary to stop payment on checks issued from said account or to close said account;

4. The Matavas stopped payment on a check;

5. A criminal or civil action against the plaintiff had been commenced by an

        automobile dealership in Bristol, Connecticut;

6.     Plaintiff had participated in claiming that an oil company had caused damage to her furnace and she had alleged that a check to said company had been stopped as a result of a clerical error;

7.     Plaintiff had participated in making a claim that a vehicle sold to her had been defective;

8.     Someone resembling the plaintiff had handed a bad check to a driver of an oil truck.

Plaintiff acknowledges that defendant's affidavit is the sole foundation for the misrepresentation claims yet, extraordinarily, six of the eight claims listed above do not exist within the confines of the affidavit. While claims numbered four and eight above do appear, they are not misrepresentations.

With respect to misrepresentation claim number eight, plaintiff has conceded that she handed the oil delivery driver a check that was subsequently stopped. The affidavit reads: "Handfield met Jennifer Matava who handed him a check from J.M. Builders in the amount of $329.25 . . . The check was deposited the following day at New Alliance Bank and was returned to us unpaid on March 13, 2006 after a stop payment was placed on the check." Collins Aff. 2.

With respect to misrepresentation claim number four, plaintiff argues she was unfairly lumped together with her family members. The Matavas (plural) are described as placing a stop payment on checks twice in defendant's affidavit. In the first instance, plaintiff requested delivery of 150 gallons of heating oil by phone. Upon delivery, plaintiff handed a check from J & M Builders to the truck driver in her front yard. The check was deposited the following day

3

but was returned unpaid because a stop payment was placed. In the affidavit, defendant simply wrote that an employee of the oil company "turned over the notice he received from his bank that the Matavas had placed a stop payment on their check." Collins Aff. 3. In the second instance, defendant was merely relaying statements provided by an auto dealership's financial controller when he wrote that "the Matavas had placed a STOP PAYMENT on the check." Collins Aff. 6. Although the check was written by plaintiff's eighteen-year-old son, it was used as a down payment on a vehicle purchased by plaintiff. It was plaintiff who contracted to buy the vehicle and plaintiff who became delinquent when the payment was stopped.

## **DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty

Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Malicious Prosecution**

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982).  Here, plaintiff cannot satisfy the third element because defendant acted with probable cause.

"The threshold issue for the Court is whether, on the facts alleged, [the plaintiff's] right to be free from arrest without probable cause was violated. This question is primary both for a § 1983 false arrest or malicious prosecution analysis ...[because] the existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution."

Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 307 (D. Conn. 2002) (citing Garcia v. Gasparri, 193 F. Supp. 2d 445, 449 (D. Conn. 2002).

Plaintiff argues that defendant deliberately or recklessly omitted exculpatory information, such as plaintiff's inability to access bank accounts belonging to her family members.  This argument is unavailing because the underlying charge stemmed from alleged conspiracy between plaintiff and her husband.  It is uncontested that plaintiff's husband had authority to stop payment on the checks.  Assuming defendant knew that plaintiff lacked access to relevant bank accounts, that knowledge would be immaterial to a finding of probable cause for conspiracy to commit larceny because plaintiff's husband was arrested and charged as a coconspirator pursuant to the same affidavit.

Judge Schuman of the Connecticut Superior Court previously determined that there was probable cause for the warrant to issue, and this Court agrees.  In the underlying criminal matter, on September 27, 2007, plaintiff filed a motion to dismiss and request for a Franks hearing on the issue of probable cause.  Franks v. Delaware, 438 U.S. 154, 171-72 (1978).  After the hearing, Judge Schuman concluded that plaintiff could not prevail under Franks.   The Franks standard imposes a duel burden:

> (1) The plaintiff must make a substantial showing of evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and
>
> (2) The plaintiff must establish that the allegedly false statement is necessary to the finding of probable cause.  Id.

Here, plaintiff cannot satisfy either prong of Franks.  Six of the eight allegedly false statements were not proffered at all.  The two statements that were included in defendant's

affidavit show no reckless disregard for the truth. Most importantly, the allegedly false statements were clearly not necessary to the finding of probable cause. The underlying offense for which plaintiff was charged was conspiracy to commit larceny. Defendant's fifteen page affidavit, which Judge Schuman described as "unusually long and detailed" and "over-inclusive," chronicled the allegations of four separate victims who recounted firsthand interactions with plaintiff. In every case, plaintiff participated in acquiring property in exchange for a check that was cancelled before victims could obtain payment. As such, absent the alleged misrepresentations, sufficient content to support probable cause clearly remained.

### Qualified Immunity

Even if defendant acted without probable cause, he is entitled to qualified immunity from liability.

> The law of qualified immunity is well settled in the Second Circuit: Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met-and the defendant is entitled to qualified immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions.

Shattuck, 233 F. Supp. 2d at 307 (citing Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995)) (citations and internal quotation marks omitted).

Police activity conducted pursuant to a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. United States v. Leon, 468 U.S. 897, 922 (1984). The Court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization. Id. As discussed above, defendant's affidavit comprehensively cataloged complaints from four separate businesses. All of these complaints referenced plaintiff individually. Accordingly, officers of reasonable competence could find that defendant acted properly and legally.

Indeed, as both the Connecticut Superior Court and this Court have found probable cause to have existed irrespective of alleged misrepresentations, the lower threshold, that officers of reasonable competence could disagree on the legality of the defendant's actions, is easily met. Therefore, defendant is entitled to qualified immunity.

## CONCLUSION

Fore the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk is instructed to close this case.

DATED this 26th day of January, 2012 at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE